IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

STATE FARM FIRE AND CASUALTY
COMPANY,

Plaintiff,

v.                                                  Civil Action No.: 2:07cv566

NATIONWIDE MUTUAL INSURANCE
COMPANY, and NATIONWIDE MUTUAL
FIRE INSURANCE COMPANY,

Defendants.

## ORDER and OPINION

This matter is before the Court on cross motions for summary judgment filed by plaintiff

State Farm Fire and Casualty Company ("State Farm") and defendants Nationwide Mutual

Insurance Company and Nationwide Mutual Fire Insurance Company (collectively

"Nationwide"). Docs. 13 and 16. This case arises out of a traffic accident, in which a pedestrian

was injured as a result of the driver's negligence. State Farm filed the instant declaratory

judgment action in order to resolve a dispute as to whether State Farm or Nationwide is

responsible for a "gap" in coverage between the driver's motor vehicle liability policy and a

personal liability umbrella policy under which the driver was an additional insured. The parties

stipulated that there is no genuine issue as to any material fact, and requested summary

disposition of the case. The resolution of the case depends upon the interpretation of State

Farm's personal liability umbrella policy as it applies to the driver, a third party additional

insured.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Pursuant to the Stipulated Facts agreed upon by the parties, the following facts are not in

dispute. Docs. 15 and 18 ("Facts").[1]  As the result of a traffic accident, Lou Ann Broughton filed

a civil action in the Circuit Court for the City of Chesapeake against Robert Bruce Hoag, III

("Hoag III"), praying for damages in the amount of $2.5 million.  Facts ¶ 8.  The suit averred that

on March 20, 2006, while operating his 2003 Jeep Wrangler, Hoag III was involved in a collision

with Broughton, a pedestrian.  Id.  The suit alleged that Hoag III negligently operated his motor

vehicle, resulting in the collision and causing Broughton to sustain bodily injuries.  Id.

Broughton is legally entitled to recover damages of $750,000 from Hoag III as a result of this

incident.[2]  Facts ¶ 16.

At the time of the accident, Hoag III was the owner of, and regularly used, the 2003 Jeep

Wrangler that was involved in the collision with Broughton.  Facts ¶ 9.  Hoag III's vehicle was

insured under a policy of motor vehicle liability insurance issued by State Farm to Hoag III, with

bodily injury limits of $25,000 per person.  Id., Ex. D.  This was the only liability insurance

policy maintained by Hoag III for his vehicle.  Facts ¶ 15.

At the time of the accident, Hoag III's father, Robert Bruce Hoag, Jr. ("Hoag Jr."), was

the named insured under a Personal Liability Umbrella Policy issued by State Farm to Hoag Jr.,

which provided for liability coverage up to $1,000,000 ("State Farm umbrella policy" or

"umbrella policy").  Facts ¶ 14, Ex. C.  Because Hoag III was a relative of Hoag Jr. and a

---

[1]  State Farm and Nationwide each filed identical Stipulated Facts in support of their respective motions for summary judgment.  Docs. 15 (State Farm) and 18 (Nationwide).

[2]  State Farm, on behalf of Hoag III, settled Broughton's claim for the amount of $750,000.  Doc. 14 at 3 n. 2; Doc. 17 at 2.

resident of Hoag Jr.'s household at the time of the accident, Hoag III was an additional insured under the provisions of Hoag Jr.'s State Farm umbrella policy. Id. ¶ 10, Ex. C.

At the time of the incident, Hoag Jr. was the named insured under a policy of motor vehicle liability insurance issued by State Farm to Hoag Jr., with bodily injury limits of $250,000 per person. Id., Ex. E. Hoag III was not entitled to liability coverage under the Hoag Jr. motor vehicle policy for the claims asserted by Broughton. Facts ¶ 11.

At the time of the accident, Broughton was insured by Nationwide under a Personal Auto Policy that provided uninsured/underinsured motorist (UM/UIM) coverage of $50,000 per person (Facts ¶ 12, Ex. A), and a Business Auto Policy that provided UM/UIM coverage of $500,000 per person (Facts ¶ 13, Ex. B).

State Farm filed this declaratory judgment action on December 5, 2007, seeking a declaration by the Court: 1) as to the rights, duties, status and other legal relations of the parties under the State Farm umbrella policy, the Nationwide personal policy, and the Nationwide business policy; 2) that any obligation of State Farm under the umbrella policy to indemnify Hoag III for claims asserted by Broughton is solely for amounts that exceed $250,000; and 3) that Hoag III is underinsured and Nationwide is responsible for any liability of Hoag III for claims asserted by Broughton which exceed the $25,000 of coverage under the Hoag III motor vehicle policy, up to $250,000. Doc. 1.

State Farm and Nationwide filed their respective motions for summary judgment on September 26, 2008. Docs. 13, 14, 16, 17. At the final pretrial conference on November 3, 2008, the parties confirmed that there were no genuine issues of material fact to be determined at trial, and requested that the case be resolved pursuant to their cross motions for summary judgment. The parties agreed that the issue to be determined by the Court is whether State Farm

is obligated under the umbrella policy to pay for the amount of loss that exceeds Hoag III's

underlying insurance of $25,000, or whether State Farm is only obligated to pay for the amount

of loss in excess of $250,000.  Nationwide stipulated that if the Court determines that State Farm

is only obligated to cover the amount of loss in excess of $250,000, then Nationwide will be

responsible for the underinsured "gap" of $225,000 pursuant to Broughton's UM/UIM coverage.

## II. TERMS OF THE STATE FARM UMBRELLA POLICY

Under the umbrella policy definitions, the terms "you" and "your" are not limited to the

named insured, but also include the "named insured's relatives" who are "residents the named

insured's household".  Facts, Ex. C at 5.  Thus, it is undisputed that the terms "you" and "your"

include Hoag III.

The coverage provision of the policy states: "If you are legally obligated to pay damages

for a loss, we will pay your **net loss** minus the **retained limit**. . . ." Id. at 7 (emphasis in

original).  "Net loss" means, in pertinent part, "the amount you are legally obligated to pay as

damages for personal injury . . ." Id. at 6.  The relevant definition of "retained limit" is "the total

amount of liability of your underlying insurance".  Id.

The policy also sets forth provisions regarding "Your Duties to Us".  This section

provides:

> We may not provide coverage if you refuse to . . .
>
> 4.  maintain your underlying insurance. All insurance listed in the **Declarations**
>     must be maintained at all times. The limits listed in the **Declarations** are the
>     minimum you must maintain. If the required underlying limits are not
>     maintained, you will be responsible for the underlying limit amount of any
>     loss.

Id. at 10 (emphasis in original).  The Declarations require an underlying insurance policy with a

minimum limit of $250,000 per person for bodily injury.  Id. at 2.

4

### III. STANDARD OF REVIEW AND APPLICABLE LAW

Entry of summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c). "Genuine" disputes are those that show a true conflict between established facts. Thompson Everett, Inc. v. Nat'l Cable Adver., L.P., 57 F.3d 1317, 1323 (4th Cir. 1995). "Material" facts are those that bear directly on "an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A federal court sitting in diversity must apply the substantive law of the forum state, including its choice of law rules. Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270 (4th Cir. 2007). Virginia follows the general principle that an insurance contract is interpreted pursuant to the law of the place where the policy was delivered. Buchanan v. Doe, 246 Va. 67, 70 (1993). Thus, because the State Farm umbrella policy was delivered in Virginia (Facts, Ex. C at 1-2), it will be interpreted pursuant to Virginia law.

### IV. ANALYSIS

State Farm contends that, under the terms of its umbrella policy, State Farm is only obligated to indemnify Hoag III for the amount of loss that exceeds $250,000. Doc. 13. Nationwide argues that State Farm is obligated to extend liability coverage in excess of Hoag III's underlying motor vehicle insurance of $25,000 without any underinsured gap. Doc. 17.

#### A. Interpretation of the Policy

As with any contract, an insurance policy is to be interpreted in accordance with the plain meaning of the language contained in its provisions. "It is the function of the court to construe

5

the language of the contract as written, and the court cannot make a new contract for the parties

different from that plainly intended and thus create a liability not assumed by the insurer."

Quesenberry v. Nichols, 208 Va. 667, 672 (1968) (citations omitted).  The contract must be read

as a whole, and meaning must be given to every clause, if possible, in order for the court to

ascertain the unitary agreement of the parties.  Id.; Berry v. Klinger, 225 Va. 201, 208 (1983).

Where the language of the policy is ambiguous or "susceptible of two constructions, it is to be

construed liberally in favor of the insured and strictly against the insurer."  Hill v. State Farm

Mut. Auto. Ins. Co., 237 Va. 148, 153 (1989).

Under the plain language of the umbrella policy, coverage is defined as "your net loss"

minus the "retained limit", which is the "total amount of liability of your underlying insurance",

without reference to the minimum coverage amounts listed in the Declarations.  Since "your"

includes Hoag III, Nationwide contends that State Farm must pay $750,000, the net loss, minus

$25,000, the limit of Hoag III's underlying insurance.  Doc. 17 at 8.  Thus, Nationwide contends,

there is no underinsured "gap" in coverage, as State Farm is obligated to provide coverage up to

the amount of Hoag III's underlying insurance.  Id. at 12.

However, the section of the policy entitled "Your Duties To Us", Paragraph 4 states:

> We may not provide coverage if you refuse to . . . maintain your underlying
> insurance.  All insurance listed in the Declarations must be maintained at all
> times.  The limits listed in the Declarations are the minimum you must maintain.
> If the required underlying limits are not maintained, you will be responsible for
> the underlying limit amount of any loss.

Facts, Ex. C at 10.  Nationwide limits its analysis to the first two sentences of this provision.

Doc. 19 at 8-9.  As to the first sentence, Nationwide argues that "underlying insurance" is not

defined with reference to any particular dollar figure, and Hoag III's maintenance of his

underlying insurance at the policy limit of $25,000 does not violate this provision.  Id. at 8.  As

6

to the second sentence, Nationwide contends that because it does not specifically require "you", including Hoag III, to maintain the insurance minimums in the Declarations, this provision was satisfied by Hoag Jr.'s maintenance of all insurance required in the Declarations. Id.

However, contracts are to be read as a whole, and meaning is to be given to all provisions, if possible, in order to determine the intent of the parties. Berry, 225 Va. at 208. The Court cannot limit its analysis to the first two sentences of Paragraph 4 and disregard the rest of the provision, as Nationwide would suggest. If the provision applies at all, it must apply in its entirety. Thus, examining the third and fourth sentences of Paragraph 4, it appears that since "you" includes Hoag III, the provision requires Hoag III to maintain underlying insurance in the amounts listed in the Declarations, and, if he fails to do so, limits Hoag III's coverage to amounts that exceed the specified minimum.

Hoag III did not maintain underlying insurance with a limit of $250,000 for bodily injury, as specified in the Declarations, and Hoag III was not insured under Hoag Jr.'s underlying motor vehicle policy that provided coverage up to $250,000. Thus, if Paragraph 4 of "Your Duties to Us" applies to Hoag III, it would limit Hoag III's coverage for the loss to the amounts in excess of $250,000.

The determination of this case, then, turns upon the question of whether this provision, which requires the insured to perform the affirmative act of maintaining insurance at policy limits greater than the amount required by law (see Va. Code Ann. § 46.2-472), is enforceable against a third party additional insured of the policy. There is no evidence in this case to indicate that Hoag III had knowledge of the umbrella policy's requirement to maintain insurance with policy limits of $250,000 for bodily injury, or that he had knowledge of the benefits he was eligible to receive under the umbrella policy.

**B. Enforceability of the Minimum Insurance Requirement Against Hoag III**

The question of whether the parties to a contract may impose this type of duty upon a
third party appears to be an issue of first impression under Virginia law.  Had the parties
requested resolution of this issue at an earlier stage, the Court could have certified the question to
the Virginia Supreme Court.  However, as no such request was made, the Court will proceed
with its findings based on a prediction of how the Virginia Supreme Court would resolve this
issue.

In insurance terminology, Hoag III is an additional insured under the State Farm umbrella
policy.  An additional insured is not a party to the insurance contract but is entitled to coverage
under the policy, and is thus akin to a third party beneficiary under general principles of contract
law.  The Court therefore looks to both insurance contract and third party beneficiary principles
to determine the rights and obligations of the additional insured.

Although the general principle of contract law is that "a person is not bound by a contract
to which he did not agree," <u>Bishop v. Med. Facilities of Am. XLVII(47), Ltd. P'ship</u>, 65 Va. Cir.
187, 192 (Va. Cir. Ct. 2004), there is an exception to this general rule where a third party seeks
to enforce a contract assumed for his benefit.  The Virginia Supreme Court has held that a third
party beneficiary is "entitled to sue on the contract, bound by the terms of the contract, and
subject to defenses arising out of the contract." <u>Syndor & Hundley, Inc. v. Wilson Trucking
Corp.</u>, 213 Va. 704, 707 (1973).  Pursuant to Va. Code Ann. § 55-22, "the third-party
beneficiary's rights under the instrument can rise no higher than the rights of the [promisee]."
<u>Ashmore v. Herbie Morewitz, Inc.</u>, 252 Va. 141, 149 (1996).

While the Virginia Supreme Court has not decided a case directly addressing whether a
third party beneficiary is bound by the type of provision at issue here, it has previously cited

8

Williston on Contracts as a recognized authority in the field of contract law.  See Ashmore, 252

Va. at 148; Richmond Shopping Center, Inc. v. Wiley N. Jackson Co., 220 Va. 135, 142 (1979);

and Utsch v. Utsch, 266 Va. 124, 130 (2003).  According to Williston on Contracts, a third party

beneficiary's rights are subject to "all express or implied conditions affecting the promise in

which he is interested."  13 Richard A. Lord, Williston on Contracts § 37:24 (4th ed. 2008).  This

is true even if "the condition is an external event outside the control of the parties to the contract

or the beneficiary," or if "it is something which can be brought about by the beneficiary."  Id.

"Third party beneficiaries must take their contracts as they find them – the good with the bad."

Id. § 37:23.

Because the third party beneficiary takes his rights under the contract subject to any

conditions, the distinction between a promise and a condition is relevant in evaluating the

enforceability of the terms of the contract against the third party.  According to Williston on

Contracts:

> A promise is a manifestation of an intention to act or refrain from acting in a
> specified way, so made as to justify the promisee in understanding that a
> commitment has been made, while a condition is an event, not certain to occur,
> which must occur, unless its nonoccurrence is excused, before performance under
> a contract becomes due.  If there is a condition precedent, the party in whose
> favor the condition exists is not liable to an action until the condition has been
> met.  Breach of a promise, on the other hand, subjects the promisor to liability in
> damages, but does not necessarily excuse performance on the other side.
> Nonoccurence of a condition prevents the promisee from acquiring a right, or
> deprives him or her of one, but subjects him or her to no liability.

Id. § 38:5.

It appears that the provision of the State Farm umbrella policy at issue here is a condition

precedent, not a promise.  The subject provision states: "The limits listed in the Declarations are

the minimum you must maintain.  If the required underlying limits are not maintained, you will

be responsible for the underlying limit amount of any loss."  Facts, Ex. C at 10 ¶ 4.  Under this

9

provision, the insured's maintenance of underlying insurance in the amounts listed in the Declarations, including $250,000 for bodily injury, is a condition precedent to State Farm's full performance of providing payment up to the insured's underlying insurance. Although the provision requires that the insured maintain underlying insurance with the minimum limits specified, there is no penalty for failing to do so unless the insured seeks to enforce the policy. When the insured seeks payment under the umbrella policy, the minimum insurance provision operates as a condition on State Farm's full performance under the contract, and correspondingly, the insured's right to payment up to the amount of his underlying insurance. If the insured does not maintain the underlying minimum policy limits specified in the Declarations, State Farm will only pay the amount of loss in excess of that minimum limit. Thus, this provision is not a promise to act such that the insured would be liable in damages for a breach. Instead, this provision is a condition, the nonoccurrence of which "prevents the [insured] from acquiring a right . . . but subjects him or her to no liability." Williston on Contracts § 38:5. Under the majority view as expressed by Williston on Contracts, a third party's rights are subject to such a condition. Id. § 37:24.

Virginia cases interpreting insurance contracts are also persuasive in finding that third party additional insureds are bound by policy provisions that operate as conditions precedent to the insurance company's obligation to pay. In State Farm Fire & Casualty Co. v. Walton, 244 Va. 498, 503 (1992), the Virginia Supreme Court held that an additional insured was required under the terms of the policy to "perform the listed duties that are applicable." In that case, the failure of the additional insured to perform the duty of giving notice to the insurer of the accident would have excused the insurance company's obligation to provide coverage. Id. Similarly, in Shipp v. Connecticut Indem. Co., 194 Va. 249 (1952), the insurer asserted that the breach by an

10

additional insured of a cooperation provision in the insurance contract excused its performance

of paying for the loss.  In each of these cases, the failure of an additional insured to perform his

duties would excuse the insurance company from providing coverage, but would not make the

additional insured liable in damages for breach of a contractual duty to which he or she was not a

party. Walton, 244 Va. at 503; Shipp, 194 Va. at 550.  Although the Virginia Supreme Court did

not ground its reasoning upon these terms, it appears that its holdings are in accord with the

principle that the rights of a third party beneficiary are subject to all "conditions affecting the

promise in which he is interested." Id. § 37:24.  Furthermore, the Court has found no Virginia

case in which an insured's duty under an insurance policy was held to be unenforceable against

an additional insured.  Accordingly, the rulings of the Virginia Supreme Court support the

finding that the condition precedent in this case is enforceable against the third party additional

insured.

The Court also notes that other jurisdictions have recognized the principle that third party

additional insureds are bound by conditions precedent to insurance coverage set forth in the

policy. See Pennsylvania Threshermen & Farmer's Mut. Cas. Ins. Co. v. Owens, 238 F.2d 549

(4th Cir. 1956) (examining whether the additional insured had failed to cooperate in his defense,

as required by the terms of the policy, so as to relieve the insurance company of its obligation to

pay for the loss); see also State Farm Fire & Casualty Co. v. Oliveras, 441 So. 2d 175, 177-78

(Fla. 4th Dist. Ct. App. 1983) (under an umbrella policy conditioning payment on the insured's

maintenance of minimum underlying policy limit, the third party additional insured was

"required" to maintain the specified underlying minimum insurance).

Thus, the Court FINDS that the provision of the State Farm umbrella policy requiring the

insured to maintain underlying insurance at the minimum limits specified in the Declarations is a

11

condition precedent to State Farm's obligation to pay for the loss that exceeds the insured's underlying policy limits. The Court further **FINDS** that the Virginia Supreme Court would hold such a condition precedent to be enforceable against a third party additional insured seeking coverage under the policy. Therefore, because Hoag III did not maintain underlying insurance at the required minimum limit of $250,000 for bodily injury, pursuant to the terms of the policy, State Farm is only obligated to pay for the amount of loss in excess of $250,000.

## CONCLUSION

For the reasons stated herein, the Court **FINDS** that State Farm is obligated under the umbrella policy to indemnify Hoag III only for the amount of loss in excess of $250,000. Accordingly, Hoag III is underinsured to the extent of $225,000, and Nationwide is responsible for this amount pursuant to its stipulation. Thus, State Farm's motion for summary judgment is **GRANTED** (Doc. 13), and Nationwide's motion for summary judgment is **DENIED** (Doc. 16).

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record.

It is so **ORDERED**.

/s/
Henry Coke Morgan, Jr.
Senior United States District Judge

HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
Date: 2/5/09

12